# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FAITH ROSS-THORNTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-0675 |
| ) | Judge Echols |
| CONTINENTAL CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Continental Casualty Company's ("CNA's") Motion for Summary Judgment (Docket Entry No. 20). Plaintiff Faith Ross-Thornton ("Ross-Thornton") has filed a response and memorandum in opposition (Docket Entry Nos. 27 & 28), to which Defendant has replied (Docket Entry No. 34).

## I. FACTS

Many of the facts in this case are not in dispute. Construed in Plaintiff's favor, as they must be for present purposes, the relevant facts are as follows.

Plaintiff, an African-American female, began her employment with CNA in its Pittsburgh, Pennsylvania office. She transferred to CNA's Nashville, Tennessee office in November, 1998 where she was employed as a claims specialist in the auto property damage unit.

On August 30, 2001, Plaintiff filed a Charge of Discrimination against CNA with the Equal Employment Opportunity Commission ("EEOC") in which she claimed that she was passed over several times for clerical supervisory positions. (Docket Entry No. 22-2). That charge was dismissed by the EEOC on February 28, 2002.

1

On July 23, 2002, Plaintiff's then-supervisor, Deborah Wardlaw ("Wardlaw"), placed Plaintiff on a "Level 4," which, under CNA's evaluation system, meant that Plaintiff was not performing to expectations.[1] According to the memo from Wardlaw, Plaintiff was placed on Level 4 because she had a low closing ratio of open to closed files and failed to contact numerous customers promptly after the filing of a claim. Plaintiff was informed that her job performance would be monitored for thirty days and that failure to improve could result in discipline up to and including termination. (Docket Entry No. 22-6). Plaintiff managed to return to a Level 3 (an acceptable level) within a month or so of this memorandum.

In April or May 2003, Robin Ownby ("Ownby") became the Claims Manager and supervisor over the auto property damage unit in which Plaintiff worked. Plaintiff was placed on a written "disciplinary action" by Ownby for performance deficiency on November 24, 2003. According to the memorandum documenting the deficiencies, Plaintiff had failed to contact forty-one claimants within twenty-four hours of a claim being assigned to her. Plaintiff also was noted to have "numerous complaints" lodged against her related to "rude and unprofessional conduct." Plaintiff was given until December 24, 2003 to make appropriate contacts and informed that, with regard to new claims, she was supposed to contact the claimants within twenty-four hours. Failure to meet these goals would result in Plaintiff being moved back to a Level 4. Plaintiff was also informed that failure to meet the goals and maintain an acceptable level of performance could result in discipline up to and including termination. (Docket Entry No. 22-7).

On January 13, 2004, Ownby recommended to her supervisor, John Holladay ("Holladay"), the Claims Director, that Plaintiff be terminated. The memorandum containing that recommendation

---

[1] Level 4 is often the final step before termination.

was also sent to Earl Lamons ("Lamons"), the Human Resources Director. In the memorandum Ownby noted numerous deficiencies, including Plaintiff's failure to make customer contact within twenty-four hours of being assigned a claim, her failure to outline a plan of action and schedule follow-up dates with customers, and her failure to review certain files, sometimes for months. Ownby noted that Plaintiff's performance problems were recurring. (Docket Entry No. 22-8).

In early February 2004, a consensus was reached between Ownby, Holladay and Lamons that Plaintiff should again be placed on a Level 4 rather than terminated. In placing Plaintiff on Level 4, it was noted that in November 24, 2003, Plaintiff had been advised that 41 claims over a three-week period had resulted in no contact with the customers and that since that time Plaintiff had focused primarily on contacting new claimants within twenty-four hours.[2] Plaintiff was told that in the next thirty days she needed to make contact within twenty-four hours of a new claim being assigned; complete new file assignments by inputting the proper coverage analysis; update files relating to reserves, plan of action outlines and investigations; manage her diary system to resolve pending files; and communicate with customers in a professional manner. Again Plaintiff was advised that a failure to meet expectations could result in termination. (Docket Entry No. 22-9).

On February 4, 2004, Plaintiff filed another Charge of Discrimination with the EEOC, alleging racial discrimination against her by CNA. Specifically, Plaintiff claimed she had been denied promotion to the clerical supervisor position back in July 2001, and further that she was not given a special investigation consultant position in November 2003. She also alleged more generally that CNA had a "virtually all-white supervisory workforce" which "treat[ed] African American

---

[2] Plaintiff had also managed to contact some earlier claimants with the help of an assistant.

3

employees in a hostile discriminatory manner" and that Ownby "views African Americans in a negative light." (Docket Entry No. 22-4 at 3). [3]

On March 2, 2004, Plaintiff was moved back up to a Level 3 because she had improved in the area of making customer contact within twenty-four hours, had entered proper documentation in the files, was managing her diary adequately, and was improving on her customer service skills. Nevertheless, because of her "performance history," Plaintiff was advised that her failure to maintain performance at acceptable levels would result in termination. (Docket Entry No. 25-15, Ex. 5).

In March 2004, Plaintiff increased a file reserve beyond her authority without approval from her supervisor. Plaintiff claims Ownby told her not to let this happen again, although in an e-mail Ownby advised Plaintiff that raising a reserve beyond one's authority was "against company policy and is grounds for termination." (Docket Entry No. 25-15, Ex. 6).

In March and early April 2004, Ownby advised Plaintiff on several occasions she had received complaints that Plaintiff was not returning telephone calls and that her voice-mail box was full. On April 5, 2004, Ownby met with Plaintiff and spoke to her about her concerns that Plaintiff was not promptly returning telephone calls, was not making initial contacts within 24 hours of notice on new claims and was not keeping proper file diaries. Plaintiff admits she in fact had problems returning telephone calls in a timely manner, making initial contacts within 24 hours of notice, and keeping proper diaries, but claims this was due to the fact that the claim volume had increased. (Pf. Response to Def. SOF ¶ 15). On more than one occasion during this time period, Plaintiff was warned that failure to improve performance and meet corporate claims handling standards could result in termination.

---

[3] That charge was dismissed by the EEOC on September 29, 2004.

On April 7, 2004, Plaintiff suffered chest pains after a meeting of the auto-property damage team. She was taken to the hospital and believed she was having a heart attack. Although no problem with Plaintiff's heart was diagnosed at that time, Plaintiff took medical leave pursuant to the Family and Medical Leave Act ("FMLA"). Plaintiff underwent unrelated surgery in June of 2004.

Shortly before Plaintiff went on medical leave, Ownby had already discussed with her supervisors recommending Plaintiff for termination. Plaintiff admits that around the time she went on leave she had discussed "some issues" with her supervisors, including Ownby. Nevertheless, she claims that it was her "understanding" she "was doing fine" and that there were no problems with her performance.

The day after Plaintiff went to the hospital complaining of chest pains, Ownby reviewed the files on Plaintiff's desk in order to reassign them. During this review, Ownby found a lawsuit on Plaintiff's desk with an accompanying facsimile dated April 1, 2004, which had not been sent to litigation counsel. It is CNA policy that claims handlers are required to turn lawsuits over to defense counsel immediately after receipt. (Pf. Depo. at 107). The review of the files on Plaintiff's desk also revealed 26 files for which no initial contact with the claimant had been made and no coverage analysis completed. Additionally, Plaintiff's voice mailbox was full, even though it could accommodate up to fifty messages. (Ownby Aff. ¶ 18).

On June 1, 2004, Ownby forwarded a memorandum to Holladay in which she recommended Plaintiff's termination. Again, Lamons was copied on that memorandum. Holladay and Lamons concurred in the recommendation.

5

Ownby and Holladay claim that at the time the decision was made to terminate Plaintiff, they were unaware that Plaintiff had filed her February 2004 EEOC charge. Plaintiff has presented no evidence to contradict such assertions.

Plaintiff's employment was terminated on August 2, 2004, when she returned to work from FMLA leave. One year later, Plaintiff filed suit in the Circuit Court for Davidson County claiming she was terminated on account of her race and age in violation of the Tennessee Human Rights Act, T.C.A. 4-21-101 *et seq*. Although unclear, Plaintiff's Complaint could also be construed as making a claim for retaliation for Plaintiff having exercised her right to leave under the FMLA.[4] The case was subsequently removed to this Court based upon diversity jurisdiction.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party

---

[4]With regard to the FMLA, all that Plaintiff states in her Complaint is that "[t]he age and race discrimination occurred on the date that Plaintiff returned from Family Medical Leave. August 2, 2004, along with retaliation against the Plaintiff." (Complaint ¶ 6).

6

does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

#### A. Race Discrimination

Plaintiff claims race discrimination in the form of disparate treatment. Although Plaintiff's race discrimination is based solely on the THRA, the same analytical framework is utilized in analyzing claims under statute as under Title VII. Gee-Thomas v. Cingular Wireless, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004). That framework is well-established.

"Disparate treatment occurs when an employer treats some employees less favorably than others because of race[.]" Hughley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). "To base a claim on disparate treatment, the plaintiff must show discriminatory motive," id., and this may be shown either through direct evidence or indirect evidence utilizing the burden shifting paradigm of McDonnell Douglas v. Green, 411 U.S. 792 (1973).

Plaintiff claims she has both direct and indirect evidence of discrimination. With regard to direct evidence, Plaintiff claims Ownby had a bias towards African-Americans. Specifically, in her deposition, Plaintiff testified as follows:

7

> Q. In this second EEOC charge which was filed in February of '04 . . . there's a line on page 3 that says, "My current unit manager Robin Ownby, white female, views African-Americans in a negative light." Is that a charge that you did make to the EEOC?
>
> A. Yes, I did.
>
> Q. And can you tell me the basis for your opinion, that opinion.
>
> A. Because it was told to another employee, Karen Brown, that when she [Ownby] became a supervisor, that I, Karen Brown, and Shirley Stegall were going to be the first that she gets out of her unit.
>
> Q. All right. Are Karen Brown and Shirley Stegall also African-American?
>
> A. African-American.

(Pf. Depo. at 91). This evidence is inadmissible because it is hearsay.[5]

"[I]t is well settled that only admissible evidence may be considered by a trial court in ruling on a motion for summary judgment." Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994). For that reason, "[h]earsay evidence may not be considered on summary judgment[,]" Jacklyn v. Shering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), let alone double hearsay, White v. Ohio, 2 Fed. Appx. 453, 454 (6th Cir. 2001), or triple hearsay. Maestas v. Segura, 416 F.3d 1182, 1190 n. 9 (10th Cir. 2005). What Karen Brown told Plaintiff that Ownby allegedly said to someone else is triple or quadruple hearsay and may not be considered by the Court in ruling on the Motion for Summary Judgment.

Because Plaintiff presents no competent direct evidence of disparate treatment she must utilize the burden shifting approach. Initially she must show (1) membership in a protected class,

---

[5]Under Rule 801 of the Federal Rules of Evidence, hearsay is a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

(2) an adverse employment action, (3) qualification, and (4) replacement by one outside of the protected class or dissimilar treatment to one similarly situated. See, Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). Upon such a showing, a defendant may rebut the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for its decision, with the plaintiff then bearing the burden of showing that the defendant's proffered reason is pretextual. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Id.

In this case, Defendant concedes for present purposes that Plaintiff can establish a *prima facie* case of discrimination.[6] Hence it focuses on setting forth a legitimate, nondiscriminatory reason for Plaintiff's termination, her poor job performance.

The record reflects Plaintiff was provided repeated notice of her specific failures and numerous warnings that her employment would be terminated if her performance did not improve. Back in July 2002, Plaintiff's then supervisor, Wardlaw, placed her on "Level 4 – failure to meet expectations" and informed Plaintiff that failure to improve could result in termination. Subsequently, in November 2003, Plaintiff was put on a written deficiency action and informed by

---

[6]Although the record contains overwhelming evidence that Plaintiff failed to meet the performance level expected for persons in her position, and little which would show that Plaintiff was performing satisfactorily so as to meet the second element of a *prima facie* case, Sixth Circuit law counsels that the employer's justification for discharge should not be used as evidence that an employee was not qualified. Cicero v. Borg-Warner Automotive Inc., 280 F.3d 579, 587-88 (6th Cir. 2002). Other circuits have observed that the question of a plaintiff's qualification, vis-a-vis satisfactory job performance, overlaps with the issue of the proffered legitimate non-discriminatory reason for the adverse action and whether that reason is pretextual. See, Gordon v. United Airlines, Inc., 246 F.3d 878, 888 n. 9 (7th Cir. 2001).

9

Ownby of specific instances of problems in her handling of claims, some of which were the same problems identified by Wardlaw in July, 2002. Again Plaintiff was warned that failure to improve her performance could result in termination.

When Plaintiff's performance did not materially improve, Ownby recommended that Plaintiff be terminated in January 2004. However, instead of termination, Ownby and her supervisors decided to give Plaintiff another chance by moving her back to Level 4. Again, Plaintiff was provided with specific examples of problem areas and CNA's expectations and warned that failure to improve could result in termination.

In March and early April, 2004, problems with Plaintiff's performance continued. Ownby learned again that Plaintiff was not returning telephone calls and her voice-mail box was full. On April 5, 2004, Ownby met with Plaintiff and spoke to her about those problems and also the continuing problems with Plaintiff failing to make initial contacts within 24 hours of notice on new claims and her failure to keep proper file diaries. Again, Plaintiff was warned that failure to improve performance and meet corporate claims handling standards could result in termination.

On April 8, 2004, the day after Plaintiff left work due to chest pains, Ownby reviewed the files on Plaintiff's desk and discovered a lawsuit on Plaintiff's desk which had not been promptly sent to litigation counsel. She also discovered a full voice mailbox and 26 files for which no initial contact with the claimant had been made and no coverage analysis completed.

Unquestionably, "[p]oor performance is a legitimate non-discriminatory reason for termination." <u>Hussain v. Highgate Hotels, Inc.</u>, 126 Fed. Appx. 256, 265 (6th Cir. 2005). Here, Plaintiff does not suggest otherwise. Moreover, Plaintiff admits she was repeatedly counseled for her lapses in performance and repeatedly warned that failure to improve could result in termination.

10

In fact, in response to Defendant's Statement of Undisputed Fact, Plaintiff admits to virtually every one of Defendant's statements about her failure to meet CNA's expectations. Likewise, in her deposition Plaintiff admitted that she was not making contact with claimants within twenty-four hours, that she did not keep her diary current, and that her mailbox would often be full which meant that customers could not reach her. (Pf. Depo. at 35-39).

Nevertheless, Plaintiff asserts she can show pretext because, while Defendant's proffered reason may have had some basis in fact, it either did not actually motivate her termination or was insufficient to warrant termination. In this regard Plaintiff points to her "understanding" that "she was doing fine" at the time she left on April 7, 2004 because of chest pains. She also notes that the number of employees in her department had been reduced, meaning that fewer employees had to cover the workload. As a consequence, those who remained were unable to return calls promptly, make contact within twenty-four hours and otherwise meet CNA's requirements.

Plaintiff's assertions are just that, assertions. They are unsupported by the evidence. While Plaintiff identified a couple of co-workers in her deposition who purportedly struggled under the new workload, she has identified no one who was perceived by management as repeatedly performing as poorly as she or who was repeatedly warned that a failure to improve could result in termination.

Merely claiming that the proffered reason provided by Defendant is insufficient to support the challenged action is not enough. Plaintiff "must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." Grbchech v. Runyon, 245 F. 547, 552 (6th Cir. 2001). Moreover, it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of

11

her own relative performance or the performance of others. Coulter v. Deloitte Consulting, LLC, 79 Fed. Appx. 864, 868 (6th Cir. 2003).

Plaintiff "must allege more than a dispute over the facts upon which [her] discharge was based." Braithwaite v. Timken Co., 248 F.3d 488, 494 (6th Cir. 2001). The "'key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.'" Id. (citation omitted). "If there is no material dispute that the employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual." Id.

Here, the evidence in the summary judgment record shows that CNA made "a reasonably informed and considered decision" in deciding to terminate Plaintiff for poor performance. Plaintiff has offered nothing which suggests CNA's perception of her inability to perform her job adequately (even after repeated warnings) was not an honestly held belief. As such, Plaintiff has not met her burden of proving pretext and dismissal of her race discrimination claim is warranted. Wright v. Murray Guard, Inc., 455 F.3d 702, 709 (6th Cir. 2006).

**B. Age Discrimination and Retaliation Claims**

As indicated previously, Plaintiff alleged in her Complaint that CNA discriminated against her based on race and age and further the Complaint could be read as stating a claim for FMLA retaliation. Plaintiff's memorandum in opposition to the Motion for Summary Judgment does not argue age discrimination or retaliation, but instead focuses on her allegations that she had been

12

subjected to discrimination based on race.  In spite of Plaintiff's apparent concession that she has no claim for age discrimination or for FMLA retaliation, this Court has independently reviewed the viability of each potential claim and finds no basis for either.

Plaintiff cannot prevail on an age discrimination claim because as a part of her *prima facie* case she must show that a similarly situated employee, outside the protected class, was treated differently.  Briggs v. Potter, 463 F.3d 507, 514 (6th Cir. 2006).  In the context of age discrimination cases, this means that the Plaintiff must show that she was treated differently than a significantly younger person.  Grojean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003).  Plaintiff makes no such showing in this case.  Moreover, as already noted, CNA has articulated a legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff has not shown that reason to be pretextual.  Hence any age discrimination claim fails.

Additionally, a retaliation claim under the FMLA also fails.   "An employer is prohibited from discriminating against employees . . . who have used FMLA leave" and "cannot use the taking of FMLA leave as a negative factor in employment actions[.]" 29 C.F.R. § 824.220(c).  "This prohibition includes retaliatory discharge for taking leave." Arban v. West Publ'g Co., 345 F.3d 390, 403 (6th Cir. 2003).

Here, Plaintiff concedes that Ownby had already recommended her termination prior to FMLA leave being taken, and hence it would be difficult for Plaintiff to show that taking leave was the reason for her dismissal as required to establish her *prima facie* case.  That aside, Plaintiff cannot establish a FMLA  retaliation because, even assuming she could establish a *prima facie* case, she has utterly failed to show that the legitimate nondiscriminatory reason for termination – her consistent poor performance – was in fact pretextual and that unlawful retaliation was the real reason

13

for the adverse action. See, Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003)(setting forth burdens of persuasion in retaliation case); Skrjanc v. Great Lake Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001)(holding that McDonnell Douglas burden shifting framework applies to FMLA retaliation claims that are based upon indirect evidence). In any event, Plaintiff explicitly conceded in her reply brief that she is not pursuing a claim under the FMLA in this case.[7]

## IV. CONCLUSION

For the foregoing reasons, Defendant Continental Casualty Company's Motion for Summary Judgment (Docket Entry No. 20) will be granted and this case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

[7]In this regard, Plaintiff states in a footnote that even though certain evidence "lends itself to the belief that the Family and Medical Leave Act may have been violated, that cause of action is not before this court." (Docket Entry No. 28 at 11 n.2).

14